Marc Reibman
Steven M. Weiner

James Sanborn

# R E I B M A N & W E I N E R

26 Court Street
Suite 1808
Brooklyn, New York 11242
Telephone (718) 522-1743
Facsimile (718) 522-6093

December 23, 2015

**BY ECF AND EMAIL**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: <u>Vasquez v. City of New York, et al., 14-cv-6488 (KPF)</u>
     *Request for an Informal Discovery Conference*

Your Honor:

  Pursuant to Local Civil Rule 37.2, plaintiff submits this letter motion for a pre-motion discovery conference regarding the outstanding discovery described below. The parties have met and conferred and were able to narrow the discovery disputes raised by the plaintiff to the issues below. Plaintiff further respectfully requests this Court consider this letter motion submitted after the close of discovery on December 18, 2015. The grounds for this additional request, which defendants oppose, are that the undersigned injured his wrist on December 17, 2015 and had to seek treatment for same.

  **A.** **Identification Photographs and Photographic Array.**

  Plaintiff alleges that on August 31, 2013, defendants falsely arrested, assaulted, and severely injured plaintiff at the 42nd Precinct. Plaintiff's First Set of Interrogatories and Request for the Production of Documents ("Discovery Requests") asked for the official identification photographs (both current and past) of the individual defendants (Officer Paul Behan, Officer John Moise, and Sergeant Franny Nunez) and three other officers (Officer Andrew Freeman, Officer Michael Fiacco, and Officer Walter Attridge). The Discovery Requests also sought all documents relating to the Civilian Complaint Review Board ("CCRB") investigation of plaintiff's allegations. The CCRB file lists the above named defendants and officers as the subjects of and witnesses to the events on August 31, 2013. (D000051.) The CCRB file also states a photo array of consisting of "all officers in the stationhouse at the time of the incident" was shown to plaintiff on August 8, 2014. (D000056.)

  Defendants claim that photographs of police officers are privileged and not subject to discovery. New York "[c]ourts recognize a qualified common law privilege ... protecting the confidentiality of certain information relating to ongoing law enforcement activities." *Adams v. City of New York*, 993 F.Supp.2d 306 (E.D.N.Y. 2014). The privilege is intended "to prevent disclosure

of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness[es] and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Dinler v. City of New York*, 607 F.3d 923, 941 (2d Cir. 2010). "[I]t is well-settled that, in order to establish the existence of the law enforcement privilege, the party asserting the privilege must make 'a substantial threshold showing [ ] that there are specific harms likely to accrue from disclosure of specific materials,' and that this burden must be discharged by presenting 'those facts that are the essential elements of the privileged relationship' and not 'by mere conclusory or *ipse dixit* assertions.'" *MacNamara v. City of New York*, 249 F.R.D. 70, 85 (S.D.N.Y. 2008).

Defendants cannot show any "specific harms likely to accrue from disclosure" of the identification photographs of the six officers named above, or the photographic array shown to plaintiff during the CCRB investigation of plaintiff's claims. *Id*. Moreover, plaintiff's right to discovery of these photographs should not be limited by defendants' offer to allow plaintiff a single viewing of the photographs at the offices of defendants' attorneys. Plaintiff is entitled to copies of these photographs to, *inter alia*, help prove the individual actions of each defendant and the other officers present at the 42nd Precinct, and otherwise prepare for trial. In particular, plaintiff has a right to show these photographs to other civilian witnesses, including Jose Tejeda (Mr. Tejeda was arrested with plaintiff and testified to observing what happened to Mr. Vasquez during the time they shared a holding cell.)

B.  **The Unredacted Command Log for August 31, 2013/Fitness For Duty Policy**

Plaintiff seeks the unredacted Command Log for August 31, 2013. Pursuant to the Patrol Guide §202-14, desk officers are required to sign their names and times when assuming their duties and when ending their tours. Pursuant to § 210-4, desk officers are required to make detailed Command Log entries when a prisoner is removed to the hospital. In this case, an ambulance arrived at the Precinct to take plaintiff to the hospital a few minutes after Sergeant Cynthia Rodriguez replaced defendant Nunez as the desk officer. (D000178A ("Sgt. Rodriguez on desk, Sgt. Nunez 62A").)[1] Pursuant to the Patrol Guide, and confirmed by Sergeant Rodriguez's deposition testimony, there should be an entry below Sergeant Rodriguez's name regarding plaintiff's medical treatment while in custody. Plaintiff is entitled to know if any such entry was made, and if so, the contents of that entry.

Defendants produced the Command Log with the "Sgt. Nunez 62A" entry after Nunez's deposition, and accordingly, plaintiff was not able to ask Nunez about the meaning of this entry. During his command as desk officer, Nunez was responsible for monitoring plaintiff and requesting medical treatment if necessary. Nunez testified that he did not observe any physical injuries on plaintiff or any need for medical treatment. Yet, at almost the exact time that "Sgt. Nunez 62A" appears on the Command Log, an ambulance was called to take plaintiff to the hospital. It appears that 62A refers to the Fitness for Duty section of the Patrol Guide (§ 203-4, p. 62-A). Plaintiff's

---

[1] A copy of the redacted Command Log is attached as Exhibit A.

Discovery Demands sought general copies of patrol guide sections and manuals, which were not produced. Plaintiff narrows this request to the Fitness for Duty 62-A policy, which is relevant to determining the significance of the "Sgt. Nunez 62A" entry and the circumstances of Nunez's departure at or before the time the ambulance was called.

    C.    **Arrest Worksheet, Complaint Report Worksheet, Prisoner Movement Slip, Medical Treatment of Prisoner, and Prisoner Roster**

The Online Booking Arrest Worksheet (PD244-159) and Complaint Report Worksheet (PD313-152A) are handwritten documents used to generate arrest and complaint reports. The Prisoner Movement Slip contains arrest information and a photograph of the prisoner taken at the Precinct. The Medical Treatment of Prisoner form is completed when a prisoner is taken to the hospital. The Prisoner Roster documents the admission and removal of prisoners at the Precinct. All of these documents were required by the NYPD's policies and procedures for plaintiff's arrest and custody on August 31, 2013. All of these documents are responsive to Plaintiff's Discovery Demands. All of these documents are relevant to plaintiff's claims. In particular, the Prisoner Movement Slip is relevant to the existence of any apparent physical injuries before the defendants' alleged assault. The Medical Treatment of Prisoner form is relevant to plaintiff's injuries at the time the ambulance arrived to take him from the cell to the hospital. The Prisoner Roster is relevant to Mr. Tejeda's testimony that he was inside the same cell as plaintiff for part of the assault (defendants testified that plaintiff was alone in the cell the entire time).

    Respectfully submitted,

By:     /s/
James Sanborn (JS-4011)
Reibman & Weiner
26 Court Street, Suite 1808
Brooklyn, New York 11242
(718) 522-1743
*Attorneys for Plaintiff*

cc:    Peter Fogarty
The New York City Law Department
100 Church Street
New York, New York 10007
*Attorneys for Defendants*